**PATRICK J. BURKE**
Colorado State Bar No. 4943
Patrick J. Burke, P.C.
303 16th Street, Suite 200
Denver, CO 80202
(303) 825-3050
patrick-j-burke@msn.com

**ELLIS M. JOHNSTON III**
California State Bar No. 223664
Clarke Johnston Thorp & Rice pc
180 Broadway, Suite 1800
San Diego, CA 92101
(619) 756-7632
trip@cjtrlaw.com

Attorneys for Mr. Earnest

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### (HONORABLE ANTHONY J. BATTAGLIA)

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 19CR1850-AJB |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT FOR FAILURE TO STATE FEDERAL OFFENSES** |
| vs. | |
| JOHN TIMOTHY EARNEST, | |
| Defendant. | |

## INTRODUCTION

On May 9, 2019, the United States filed a Complaint against Defendant John Timothy Earnest charging him with 55 counts of having violated the Church Arson Prevention Act, 18 U.S.C. § 247 (Counts 1-54, 109) and 53 counts of having violated the Hate Crimes Prevention Act, 18 U.S.C. § 249 (Counts 55-108).  (DE 1.)  On May 21, 2019, the United States filed an Indictment generally reiterating these 109 counts and adding one alleged violation of using a firearm during a crime of violence resulting in death, 18 U.S.C. § 924(c) & 924(j) (Count 110) and three alleged violations of using a firearm during a crime of violence (not resulting in death) 18 U.S.C. § 924(c) (Counts 111-113).  (DE 17.)  Mr. Earnest has moved to dismiss the

Indictment under the Fifth Amendment's Due Process and Grand Jury Clauses and the Sixth Amendment's notice requirement for failure to state federal offenses.  (DE 70.) In support of that Motion to Dismiss, Mr. Earnest submits this Memorandum of Points and Authorities.

## FACTUAL BACKGROUND

**I.      The statutory context.**

The Church Arson Prevention Act creates federal criminal liability for "[d]amage to religious property" and "obstruction of persons in the free exercise of religious beliefs."  18 U.S.C. § 247.  It provides in relevant part:

> (a) Whoever, in any of the circumstances referred to in subsection (b) of this section--
> > (1) intentionally defaces, damages, or destroys any religious real property, because of the religious character of that property, or attempts to do so; or
> > (2) intentionally obstructs, by force or threat of force, including by threat of force against religious real property, any person in the enjoyment of that person's free exercise of religious beliefs, or attempts to do so;
>
> shall be punished as provided in subsection (d).
>
> (b) The circumstances referred to in subsection (a) are that the offense is in or affects interstate or foreign commerce.

18 U.S.C. § 247.

The Hate Crimes Prevention Act creates federal criminal liability for offenses involving actual or perceived race, color, religion, or national origin:

> (a)(1) . . .  Whoever, whether or not acting under color of law, willfully causes bodily injury to any person or, through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device, attempts to cause bodily injury to any person, because of the actual or perceived race, color, religion, or national origin of any person--
> . . .

> (B) shall be imprisoned for any term of years or for life, fined in accordance with this title, or both, if--
>     (i) death results from the offense; or
>     (ii) the offense includes . . . an attempt to kill.

18 U.S.C. § 249.

Section 924(c) provides for additional punishments for:

> . . . any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm . . .

18 U.S.C. § 924(c).  Section 924(j) provides for potential death sentence where a person violates section 924(c) and, in the course of that offense, causes the death of a person through the use of a firearm.  18 U.S.C. § 924(j).

## II.    The Indictment.

The Indictment against Mr. Earnest does not contain any introductory factual allegations.  (DE 17.)

### A.    The Church Arson Prevention Act counts.

The Indictment begins with Count 1, which alleges:

> On or about April 27, 2019, within the Southern District of California, defendant JOHN TIMOTHY EARNEST intentionally obstructed, by force, victim L.G-K. in the enjoyment of her free exercise of religious beliefs and the offense was in and affected interstate commerce. The acts of defendant JOHN TIMOTHY EARNEST resulted in the death of L.G-K.  All in violation of Title 18, United States Code, Sections 247(a)(2) and 247 (d) (1).

(DE 17 at p. 1.)

Counts 2-4 of the Indictment allege the following with respect to three other listed victims identified by their initials:

> On or about April 27, 2019, within the Southern District of California, defendant JOHN TIMOTHY EARNEST intentionally obstructed, by force and threat of force, each victim listed below in the enjoyment of that victim's free exercise of religious beliefs and the offense was in and affected interstate commerce. The acts of defendant JOHN TIMOTHY EARNEST included an attempt to kill, and resulted in bodily injury to each victim in Counts 2 through 4; the acts also included the use, attempted use, and threatened use of a dangerous weapon, to wit, a Smith & Wesson Model M&P 15 Sport II semi-automatic rifle, bearing serial number ending in 950.
>
> . . .
>
> All in violation of Title 18, United States Code, Sections 247 (a)(2), 247(d)(1), and 247 (d)(3).

(DE 17 at p. 2.)

Counts 5-54 of the Indictment allege the following with respect to 49 other listed victims identified by their initials:

> On or about April 27, 2019, within the Southern District of California, defendant JOHN TIMOTHY EARNEST intentionally obstructed, by force and threat of force, each victim listed below in the enjoyment of that victim's free exercise of religious beliefs and the offense was in and affected interstate commerce. The acts of defendant JOHN TIMOTHY EARNEST included an attempt to kill each victim in Counts 5 through 54, and the use, attempted use, and threatened use of a dangerous weapon, to wit, a Smith & Wesson Model M&P 15 Sport II semi-automatic rifle, bearing serial number ending in 950.
>
> …
>
> All in violation of Title 18, United States Code, Sections 247(a)(2), 247(d)(1), and 247(d)(3).

(DE 17 at pp. 2-4.)

Count 109 of the Indictment alleges:

4

19cr1850-AJB

> On or about March 24, 2019, within the Southern District of California, defendant JOHN TIMOTHY EARNEST intentionally attempted to damage and destroy religious real property, that is, the Dar-ul-Arqam Mosque, Escondido, California, because of the religious character of that property, and the offense was in and affected interstate and foreign commerce.  Such acts included the use of fire. All in violation of Title 18, United States Code, Sections 247(a)(1) and 247(d)(3).

(DE 17 at p. 8.)

**B.    The Hate Crimes Prevention Act counts.**

Count 55 of the Indictment alleges:

> On or about April 27, 2019, within the Southern District of California, defendant JOHN TIMOTHY EARNEST willfully caused bodily injury to L.G-K., because of the actual and perceived race of any person.  The offense resulted in the death of L.G-K.  All in violation of 6 Title 18, United States Code, Section 249(a)(1)(B)(i).

(DE 17 at p. 5.)

Counts 56-58 of the Indictment allege the following with respect to three other listed victims:

> On or about April 27, 2019, within the Southern District of California, defendant JOHN TIMOTHY EARNEST willfully caused bodily injury to the victims listed below, because of the actual and perceived race of any person.  Each offense included an attempt to kill each victim listed . . . .  All in violation of Title 18, United States Code, Section 249(a)(1)(B)(ii).

(DE 17 at p. 5.)

Counts 59-108 of the Indictment allege the following with respect to forty-nine other listed victims:

> On or about April 27, 2019, within the Southern District of California, defendant JOHN TIMOTHY EARNEST willfully attempted to cause bodily injury to each

victim listed below, because of the actual and perceived race of any person.  Each offense included an attempt to kill each victim listed . . . .  All in violation of Title 18, United States Code, Section 249(a)(1)(B)(ii).

(DE 17 at pp. 5-7.)

### C.   The counts charging Use of Firearm during a Crime of Violence.

Count 110 of the Indictment alleges:

> On or about April 27, 2019, within the Southern District of California, defendant JOHN TIMOTHY EARNEST knowingly used, carried, and discharged a firearm, that is, a Smith & Wesson Model M&P 15 Sport II semi-automatic rifle, bearing serial number ending in 950, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is, the offenses charged in Counts 1 and 55 of this Indictment; and caused the death of and unlawfully killed with malice aforethought victim L.G-K., a human being, through the use of a firearm.  All in violation of Title 18, United States Code, Sections 924(c) and 924(j).

(DE 17 at p. 8.)

Count 111-113 of the Indictment alleges the following with respect to three other listed victims:

> On or about April 27, 2019, within the Southern District of California, defendant JOHN TIMOTHY EARNEST knowingly used, carried, and discharged a firearm that is, a Smith & Wesson Model M&P 15 Sport II semi-automatic rifle, bearing serial number ending in 950, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is, the offenses charged in this Indictment set forth below:

| Count | Offense |
| --- | --- |
| 111 | Counts 2 and 56 |
| 112 | Counts 3 and 57 |
| 113 | Counts 4 and 58 |

19cr1850-AJB

All in violation of Title 18, United States Code, Section 924(c).

(DE 17 at pp. 8-9.)

### D. Remaining allegations.

Following these 113 counts, the Indictment contains "Special Findings," because the case is death-eligible (though the Attorney General of the United States has not yet decided whether to authorize the death penalty in this case), and Forfeiture Allegations.  (DE 17 at pp. 9-11.)  There is no other content to the Indictment.

### ARGUMENT

I.    **This Court should dismiss the Indictment because its factual allegations omit essential elements of the offenses and are otherwise insufficient to state the federal crimes charged, in violation of the Fifth Amendment's Grand Jury and Due Process Clauses and the Sixth Amendment's guarantee of adequate notice to the accused.**

### A. The Constitution requires indictment by grand jury, due process, and notice of charges.

The Fifth Amendment guarantees federal criminal defendants due process and further provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."  U.S. Const. amend. V.  "The constitutional provision that a trial may be held in a serious federal criminal case only if a grand jury has first intervened reflects centuries of antecedent development of common law, going back to the Assize of Clarendon in 1166."  *Russell v. United States*, 369 U.S. 749, 761 (1962).  "The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge."  *Stirone v. United States*, 361 U.S. 212, 216 (1960).

The Sixth Amendment guarantees a criminal defendant a fundamental right "to be informed of the nature and the cause of the accusation."  U.S. Const. amend. VI.  Under the Sixth Amendment, the charging document is required to "state the elements

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

of an offense charged with sufficient clarity to apprise a defendant of what he must be prepared to defend against." *Givens v. Housewright*, 786 F.2d 1378, 1380 (9th Cir. 1986) (reversing denial of habeas relief as to conviction for first-degree murder due to violation of Sixth-Amendment notice requirement); *see also* Fed. R. Crim. P. 7(c)(1) ("The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . .").

In *Russell*, the Supreme Court reversed convictions for refusal to answer questions before a congressional subcommittee because the indictments had failed to identify the subject under inquiry at the time the witnesses were interrogated.  369 U.S. at 754-72.  *Russell* held that the identification of the subject of congressional inquiry "is central to every prosecution under the statute" and that reasoned that "[w]here guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute."  *Id.* at 764; *see also United States v. Simmons*, 96 U.S. 360, 362 (an indictment that does not apprise the accused of the nature of the accusation against him with reasonable certainty is defective, even though it may follow the language of the statute).

Thus, "[i]t is an elementary principle of criminal pleading, that, where the definition of an offence . . . includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition, but it must state the species,—it must descend to particulars."  *Russell*, 369 U.S. at 765 (quoting *United States v. Cruikshank*, 92 U.S. 542, 558 (1875)).  In addition to providing the accused with adequate notice and ensuring double-jeopardy protection from further prosecution for the same offense, this requirement is necessary "to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had."  *Cruikshank*, 92 U.S. at 558.  "For this, facts are to be stated, not conclusions of law alone."  *Id.*  "A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity

of time, place, and circumstances." *Id.*; *see also Hamling v. United States*, 418 U.S. 87 (1974) ("Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)).

Any other approach would violate the Grand Jury Clause of the Fifth Amendment, as *Russell* explained:

> To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.

369 U.S. at 770.

The Ninth Circuit has held that "if properly challenged prior to trial, an indictment's complete failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of the indictment." *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999). "Such a failure 'generally constitutes a fatal defect' that can not be cured through jury instructions, because a 'completely missing essential element' leaves 'nothing for a petit jury to ratify.'" *Id.* at 1180 (quoting *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979)).

In *Keith*, the defendant was charged with involuntary manslaughter under 18 U.S.C. § 1112 for a vehicular homicide that had occurred on a Navajo reservation. The indictment charged the language of the statute, which required that the defendant killed someone in the commission of a lawful act that might produce death by operating a motor vehicle "without due caution and circumspection." 605 F.3d at 463.

But case law had held that it was necessary to instruct jurors that in order to convict, they had to find both gross negligence and that the defendant had certain levels of knowledge regarding the threat his conduct posed to the lives of others, and the indictment did not require the grand jury to make either of these findings. *Id.* at 463-64. Reasoning that "[t]he indictment under which Keith was charged did not contain all the elements of the offense charged," the Ninth Circuit reversed. *Id.* at 464-65. In so doing, *Keith* expressly rejected the government's argument that the indictment was sufficient because it alleged all the elements set forth in the involuntary-manslaughter statute. 605 F.2d at 464 ("Although an indictment tracking the language of a statute is usually adequate because statutes usually include all the elements of a crime, an indictment is inadequate when it fails to allege an essential element of the offense even when it tracks the language of the statute.").

As the Ninth Circuit held more than four decades ago:

> The requirement that an indictment contain a few basic factual allegations accords defendants adequate notice of the charges against them and assures them that their prosecution will proceed on the basis of facts presented to the grand jury. Such a requirement is neither burdensome nor unfair to the prosecuting authorities.

*United States v. Cecil*, 608 F.2d 1294, 1297 (9th Cir. 1979) (reversing marijuana importation and distribution convictions of multiple defendants due to a "glaring lack of factual particularity" of the indictment).

Thus, federal courts within this Circuit have not hesitated to dismiss counts where an essential element of the crime charged is missing from the indictment. *See, e.g.*, *United States v. Omer*, 395 F.3d 1087, 1088-89 (9th Cir. 2005) (in bank-fraud case, indictment's failure to recite the essential element of the materiality of the scheme to defraud is a fatal flaw requiring dismissal of the indictment); *Du Bo*, 186 F.3d at 1179-81 (reversing conviction under the Hobbs Act due to indictment's failure to allege mens rea that was not stated in the Act itself but had been implied through

case law); *United States v. Kurka*, 818 F.2d 1427, 1430-31 (9th Cir. 1987) (indictment that failed to charge that damage to motor vehicle was "willful" failed to charge essential element of crime and was therefore constitutionally defective and should have been dismissed); *United States v. Cote*, 929 F. Supp. 364, 368 (D. Or. 1996) (ruling that where fraud indictment failed to charge the "deceitful or dishonest means" element of the offense, "such an error renders the indictment constitutionally defective and mandates dismissal") (rejecting government argument that the term "defraud," which did appear in the indictment, encompassed the missing element).

**B. Given the lack of adequate factual allegations in the Indictment to support the required nexus to interstate or federal commerce, this Court should dismiss Counts 1-54 and 109 for failure to state federal offenses under the Church Arson Prevention Act.**

The Church Arson Act counts charged against Mr. Earnest require a sufficient nexus to interstate or foreign commerce to bring them under Congress's authority under the Commerce Clause. U.S. Const. art. I, § 8, cls. 1 & 3. Each of counts 1-54 of the Indictment, regarding the events at the Chabad of Poway Synagogue, summarily alleges that the offense "was in and affected interstate commerce." (DE 17 at pp. 1-2.) Count 109 of the Indictment, regarding the Escondido Mosque, summarily alleges that that offense "was in and affected interstate and foreign commerce." (DE 17 at p. 8.) No other allegations of the Indictment touch on the issue of commerce.

As the Supreme Court has explained, there are "three broad categories of activity that Congress may regulate under its commerce power." *United States v. Lopez*, 514 U.S. 549, 558 (1995). "First, Congress may regulate the use of the channels of interstate commerce." *Id.* "Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities." *Id.* "Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, i.e., those activities that

1   substantially affect interstate commerce." *Id.* at 558-59.  With respect to the third

2   power, acknowledging that not all Supreme Court Commerce-Clause precedents have

3   included the modifier "substantially," the *Lopez* court concluded, "consistent with the

4   great weight of our case law, that the proper test requires an analysis of whether the

5   regulated activity 'substantially affects' interstate commerce." *Id.* at 559.

6          The question of whether a wholly intrastate act had a substantial effect on

7   interstate commerce is a question of fact, or a mixed question of fact and law.  *Las*

8   *Vegas Merchant Plumbers Assoc. v. United States*, 210 F.2d 732, 740 (9th Cir. 1954).

9   As such, there must be some basic factual allegations about this matter in the

10  indictment.  *United States v. ORS, Inc.*, 825 F. Supp. 255, 259 (D. Hawai'i 1992).

11         Where the Commerce Clause is the source of federal jurisdiction for a charged

12  offense, federal courts have vigorously enforced the requirement that an indictment

13  adequately allege the required nexus to interstate or federal commerce.  *See, e.g.*,

14  *United States v. Fitapelli*, 786 F.2d 1461, 1462-64 (11th Cir. 1986) (reversing

15  Sherman-Act convictions because indictment's allegations were insufficient to allege

16  that defendant companies were operating in the flow of interstate commerce); *ORS,*

17  *Inc.*, 825 F. Supp. at 259 (ruling that Sherman-Act indictment was fatally defective for

18  failure to adequately allege effect on interstate commerce); *United States v. French*

19  *Bauer, Inc.*, 48 F. Supp. 260, 261 (S.D. Ohio 1942) (granting motion to quash price-

20  fixing indictment because it failed to include "not merely conclusions but factual

21  allegations" that are "sufficient to show direct and substantial impact upon interstate

22  commerce").

23         The indictment found deficient in *ORS* made "a single allegation that 'the

24  business activities of the defendants . . . substantially affected interstate trade and

25  commerce.'"  825 F. Supp. at 260.  But there was "not a single fact in the indictment to

26  show that ORS's waste disposal services on the island of Oahu had any effect on

27  interstate commerce."  *Id.*  The Indictment here is even more deficient than the

28  indictment dismissed in *ORS*, since the Indictment against Mr. Earnest does not even

allege that interstate or foreign commerce were "substantially" affected as required by *Lopez*, 514 U.S. at 549.  (DE 17 at pp. 1-4, 8.)  Under the principles of controlling precedent, the omission of this necessary element alone renders these counts fatally deficient, and they must be dismissed.  *See Russell*, 369 U.S. at 770; *Omer*, 395 F.3d at 1088-89; *Du Bo*, 186 F.3d at 1178-79; *Kurka*, 818 F.2d at 1430-31; *Cecil*, 608 F.2d at 1295-97; *Keith*, 605 F.2d at 464-65.

Beyond this particular deficiency, given the entire body of case law discussed herein construing the Fifth- and Sixth-Amendment requirements for an indictment to be sufficient, and given the overall failure of the Indictment to allege particular facts sufficient to support the federal crimes charged, Counts 1-54 and 109 must be dismissed.  Again, there are no supporting factual allegations in the Indictment whatsoever.  (DE 17.)  Each count contains the most bare-bones allegations imaginable.  (DE 17 at pp. 1-4, 8.)  Review of the government's allegations does nothing to illuminate the government's theory of how it contends Commerce-Clause jurisdiction is established here for each count under 18 U.S.C. § 247(b).  For example:

- For each of Counts 1-54, does the government contend that the offense used a channel of interstate commerce (under *Lopez*'s first category)?
    - If so, what was the channel?
    - And what was the use?
- For each of Counts 1-54, does the government contend that the offense is a person or thing in interstate commerce that is being regulated (under *Lopez*'s second category)?
    - If so, what person or what thing?
- For each of Counts 1-54, does the government contend that the offense itself *substantially* affected interstate commerce (under *Lopez*'s third category)?
    - If so, how?

- Similarly for Count 109, does the government contend that the offense used a channel of interstate or foreign commerce (under *Lopez*'s first category)?
  - If so, what was the channel?
  - And what was the use?
- For Count 9, does the government contend that the offense is a person or thing in interstate or foreign commerce that is being regulated (under *Lopez*'s second category)?
  - If so, what person or what thing?
- For Count 9, does the government contend that the offense itself *substantially* affected interstate or foreign commerce (under *Lopez*'s third category)?
  - If so, how?

None of the answers to these questions are discernible on the four corners of the Indictment.  (DE 17.)

The bare-bones Indictment in this case stands in stark contrast to the Complaint filed against Mr. Earnest, which contains a "Statement of Facts" that is ten and a half pages long.  (DE 1.)

The Indictment against Mr. Earnest is also significantly less detailed than those filed in other cases involving gun violence and homicides at religious buildings.  For example, the indictment filed against Dylann Roof in the District of South Carolina begins with three full pages of factual allegations which are then incorporated into each of the Church Arson Prevention Act Counts charged against Mr. Roof.  (Exhibit A, attached hereto, at pp. 1-4, 6-8.)  Similarly, the superseding indictment filed against Robert Bowers in the Western District of Pennsylvania begins with two pages of factual allegations.  (Exhibit B, attached hereto, at pp. 1-2.)

19cr1850-AJB

The Indictment here is insufficient to serve the multiple purposes and protections of the Fifth- and Sixth-Amendment guarantees of due process, grand-jury indictment, and adequate notice to the accused.

For all these reasons, Counts 1-54 and 109 should be dismissed.  U.S. Const. amends. V, VI.

**C. Given the lack of adequate factual allegations in the Indictment specifying the persons and races at issue, this Court should dismiss Counts 55-108 for failure to state federal offenses under the Hate Crimes Prevention Act.**

The Hate Crimes Prevention Action requires that the motivation for the offense be "because of the actual or perceived race, color, religion, or national origin *of any person*."  18 U.S.C. § 249(a)(1) (emphasis added).  With respect to this statutory language, the Hate Crime Prevention Act counts charged in the Indictment uniformly allege "because of the actual and perceived race *of any person*."  (DE 17 at 5-7 (Counts 55-108) (emphasis added).)  Thus, these counts reference "race" but do not specify *what* race and do not specify *the person* whose race is allegedly the motivating factor for each crime.

Such allegations are insufficiently particular to satisfy the requirements of the Fifth and Sixth Amendments as discussed *supra*, Argument section I.A.  As explained in *Russell*, "[w]here guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute."  369 U.S. at 764.  The term "race" is a generic term.  But as *Russell* teaches, it is not sufficient for an indictment to charge a federal criminal offence in the same generic term as may appear in a statute; instead, the indictment "must descend to particulars."  *Id.* at 765.

Here, the Court cannot tell from reviewing the four corners of the Indictment whether the government's theory is that Mr. Earnest committed the acts charged because of his own race, because of the race of the victims, or because of the race of

some third party.  Indeed, the Court cannot discern whether the government's theory might be a combination of these three possibilities for different counts or groups of counts.  This does not comport with the requirements of the Fifth and Sixth Amendments.

The infirmities of the Hate Crimes Prevention Act counts in the Indictment against Mr. Earnest are illustrated by a comparison to analogous counts charged against Mr. Roof and Mr. Bowers.  In Counts 1-12 of the indictment in *Roof*, the government specifically alleged that Mr. Roof caused bodily injury to the listed victims "because of *their* perceived race and color."  (Exhibit A at pp. 4-6 (emphasis added).)  And the detailed supporting factual allegations in the *Roof* indictment explain that Mr. Roof "decided to attack African-Americans because of their race."  (Exhibit A at p. 1.)

Similarly, in Counts 12-22 and 36-37 of the superseding indictment in *Bowers*, the government specifically alleged that Mr. Bowers "willfully caused bodily injury to each victim listed below because of *that victim's actual and perceived religion*."  (Exhibit B at pp. 4, 7 (emphasis added).)  And the detailed factual allegations in the superseding indictment explain, *inter alia*, that while Mr. Bowers was in the Tree of Life Synagogue, he "made statements conveying his anti-Semitic beliefs and indicating his desire to 'kill Jews.'"  (Exhibit B at p. 2.)

No such allegations appear in the Indictment against Mr. Earnest.  Thus, unlike the indictments in these other recent cases, the Indictment here suffers from a "glaring lack of factual particularity," and is therefore invalid.  *See Cecil*, 608 F.2d at 1297.  It is insufficient to serve the multiple purposes and protections of the Fifth- and Sixth- Amendment guarantees of due process, grand-jury indictment, and adequate notice to the accused.

For all these reasons, Counts 55-108 should be dismissed.  U.S. Const. amends. V, VI.

**D. Because the firearm counts under sections 924(c) and 924(j) are all predicated on invalid counts charged under the Church Arson Prevention Act and the Hate Crimes Prevention Act, they too must be dismissed.**

Each of the three firearm counts charged in the Indictment are predicated on one Church Arson Prevention Act count and one Hate Crimes Prevention Act count.  (DE 17 at p. 8 (Count 110, referencing Counts 1 and 55); at 8-9 (Count 111, referencing Counts 2 and 56; Count 112, referencing Counts 3 and 57; and Count 113, referencing Counts 4 and 58).)  Because those predicate counts are invalid as discussed in Argument sections I.B. and I.C., *supra*, the firearm counts likewise must also be dismissed.

## CONCLUSION

The Indictment here does not comport with minimal constitutional standards and therefore must be dismissed under applicable precedents.  To paraphrase the Ninth Circuit's remarks in *Cecil*, requiring the government to do more than they have done here would be "neither burdensome nor unfair to the prosecuting authorities."

For all these reasons, Mr. Earnest respectfully asks this Court to grant his Motion to Dismiss the Indictment.

Respectfully Submitted,

DATED:  December 11, 2020

*s/ Patrick J. Burke*
**PARTICK J. BURKE**

*s/ Ellis M. Johnston III*
**ELLIS M. JOHNSTON III**
Attorneys for Mr. Earnest

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| UNITED STATES OF AMERICA | CR. NO.: *2:15cr 472* |
| | |
| | 18 U.S.C. § 249(a)(1) |
| v. | 18 U.S.C. § 247(a)(2) |
| | 18 U.S.C. § 247(d)(1) |
| | 18 U.S.C. § 247(d)(3) |
| DYLANN STORM ROOF | 18 U.S.C. § 924(c)(1)(A) |
| | 18 U.S.C. § 924(c)(1)(C) |
| | 18 U.S.C. § 924(j) |
| | 18 U.S.C. § 3591 |
| | 18 U.S.C. § 3592 |

## INDICTMENT

THE GRAND JURY CHARGES:

1.  Defendant DYLANN STORM ROOF is a white male who, on June 17, 2015, was twenty-one years old.

2.  In April 2015, Defendant DYLANN STORM ROOF purchased a Glock, model 41, .45 caliber pistol.

3.  In the months before June 17, 2015, Defendant DYLANN STORM ROOF decided to attack African-Americans because of their race. He further decided to attack African-American worshipers in an African-American church in order to make his attack more notorious.

4.  Prior to June 17, 2015, Defendant DYLANN STORM ROOF obtained and used the website lastrhodesian.com. He

**Exhibit A**

placed on that website a manuscript and photographs expressing his racist beliefs. In the manuscript, DYLANN STORM ROOF uses racial slurs to describe African-Americans, expresses his belief that white people are superior to African-Americans, and decries integration. The photographs on lastrhodesian.com include DYLANN STORM ROOF wearing a jacket with flags of two former apartheid African nations, displaying his Glock .45 caliber pistol, and holding a confederate flag.

5. On the evening of June 17, 2015, Defendant DYLANN STORM ROOF drove to the Emanuel African Methodist Episcopal (AME) Church in Charleston, South Carolina, commonly referred to as "Mother Emanuel," to attack African-American parishioners engaged in religious activities. He selected Emanuel AME Church because it had a predominately African-American membership, and because it was significant to the people of Charleston, of South Carolina, and of the Nation.

6. By attacking African-American parishioners, Defendant DYLANN STORM ROOF wanted to increase racial tensions across the Nation, and sought retribution for perceived wrongs he believed African-Americans had committed against white people.

**Exhibit A**

7.   On the evening of June 17, 2015, African-American parishioners at Emanuel AME Church were participating in a religious worship and Bible study group led by Reverend Clementa Pinckney (a forty-one-year-old African-American man) and attended by Reverend Sharonda Coleman-Singleton (a forty-five-year-old African-American woman), Cynthia Hurd (a fifty-four-year-old African-American woman), Susie Jackson (an eighty-seven-year-old African-American woman), Ethel Lee Lance (a seventy-year-old African-American woman), K.M. (an eleven-year-old African-American girl), Reverend DePayne Middleton-Doctor (a forty-nine-year-old African-American woman), Felicia Sanders (a fifty-eight-year-old African-American woman), Tywanza Sanders (a twenty-six-year-old African-American man), Reverend Daniel Simmons, Sr. (a seventy-four-year-old African-American man), Polly Sheppard (a seventy-year-old African-American woman), and Myra Thompson (a fifty-nine-year-old African-American woman).

8.   On the evening of June 17, 2015, Defendant DYLANN STORM ROOF entered Emanuel AME Church with his Glock, model 41, .45 caliber pistol and eight magazines loaded with hollow-point bullets, with the intent of killing African-

3

**Exhibit A**

Americans engaged in the exercise of their religious beliefs.

9. The parishioners welcomed Defendant DYLANN STORM ROOF into their Bible study group, and ROOF sat next to Reverend Clementa Pinckney.

10. While the parishioners were engaged in religious worship and Bible study, Defendant DYLANN STORM ROOF drew his pistol and opened fire on the parishioners, killing Reverend Sharonda Coleman-Singleton, Cynthia Hurd, Susie Jackson, Ethel Lee Lance, Reverend DePayne Middleton-Doctor, Reverend Clementa Pinckney, Tywanza Sanders, Reverend Daniel Simmons, Sr., and Myra Thompson; and attempting to kill K.M., Felicia Sanders, and Polly Sheppard.

## COUNTS 1-9
### (Hate Crime Act Resulting in Death)

THE GRAND JURY FURTHER CHARGES:

11. The allegations set forth in paragraphs 1 through 10 are repeated and realleged as if set forth fully herein.

12. On or about June 17, 2015, in the District of South Carolina, Defendant DYLANN STORM ROOF willfully caused bodily injury to the below-listed victims because of their actual and perceived race and color:

4

**Exhibit A**

| COUNT | VICTIM |
|-------|--------|
| 1 | Reverend Sharonda Coleman-Singleton |
| 2 | Cynthia Hurd |
| 3 | Susie Jackson |
| 4 | Ethel Lee Lance |
| 5 | Reverend DePayne Middleton-Doctor |
| 6 | Reverend Clementa Pinckney |
| 7 | Tywanza Sanders |
| 8 | Reverend Daniel Simmons, Sr. |
| 9 | Myra Thompson |

The offenses resulted in the death of each of the victims in Counts 1 to 9.

All in violation of Title 18, United States Code, Section 249(a)(1).

## COUNTS 10-12
### (Hate Crime Act Involving An Attempt to Kill)

THE GRAND JURY FURTHER CHARGES:

13. The allegations set forth in paragraphs 1 through 10 are repeated and realleged as if set forth fully herein.

14. On or about June 17, 2015, in the District of South Carolina, Defendant DYLANN STORM ROOF, through the

5

**Exhibit A**

use of a firearm (a Glock, model 41, .45 caliber pistol), attempted to cause bodily injury to the below-listed victims because of their actual and perceived race and color:

| COUNT | VICTIM |
|-------|--------|
| 10 | K.M. |
| 11 | Felicia Sanders |
| 12 | Polly Sheppard |

The offenses included an attempt to kill each of the victims in Counts 10 to 12.

All in violation of Title 18, United States Code, Section 249(a)(1).

## COUNTS 13-21
### (Obstruction of Exercise of Religion Resulting in Death)

THE GRAND JURY FURTHER CHARGES:

15. The allegations set forth in paragraphs 1 through 10 are repeated and realleged as if set forth fully herein.

16. On or about June 17, 2015, in the District of South Carolina, Defendant DYLANN STORM ROOF intentionally obstructed by force each victim listed below in the

**Exhibit A**

enjoyment of that victim's free exercise of religious beliefs:

| COUNT | VICTIM |
|-------|--------|
| 13 | Reverend Sharonda Coleman-Singleton |
| 14 | Cynthia Hurd |
| 15 | Susie Jackson |
| 16 | Ethel Lee Lance |
| 17 | Reverend DePayne Middleton-Doctor |
| 18 | Reverend Clementa Pinckney |
| 19 | Tywanza Sanders |
| 20 | Reverend Daniel Simmons, Sr. |
| 21 | Myra Thompson |

The acts of Defendant DYLANN STORM ROOF resulted in the death of each victim listed in Counts 13 to 21 and were in and affected interstate commerce.

All in violation of Title 18, United States Code, Sections 247(a)(2) and 247(d)(1).

**Exhibit A**

## COUNTS 22-24
### (Obstruction of Exercise of Religion Involving An Attempt to Kill and Use of a Dangerous Weapon)

THE GRAND JURY FURTHER CHARGES:

17. The allegations set forth in paragraphs 1 through 10 are repeated and realleged as if set forth fully herein.

18. On or about June 17, 2015, in the District of South Carolina, Defendant DYLANN STORM ROOF intentionally obstructed by force and threat of force each victim listed below in the enjoyment of that victim's free exercise of religious beliefs, and attempted to do so:

| COUNT | VICTIM |
|-------|--------|
| 22 | K.M. |
| 23 | Felicia Sanders |
| 24 | Polly Sheppard |

The acts of Defendant DYLANN STORM ROOF included an attempt to kill each of the victims in Counts 22 to 24; involved the use of a dangerous weapon (a Glock, model 41, .45 caliber pistol); and were in and affected interstate commerce.

All in violation of Title 18, United States Code, Sections 247(a)(2), 247(d)(1), and 247(d)(3).

**Exhibit A**

## COUNTS 25-33
## (Use of a Firearm to Commit Murder During and In Relation to a Crime of Violence)

THE GRAND JURY FURTHER CHARGES:

19.   The allegations set forth in paragraphs 1 through 10 are repeated and realleged as if set forth fully herein.

20.   On or about June 17, 2015, in the District of South Carolina, Defendant DYLANN STORM ROOF knowingly used and discharged a firearm (Glock, model 41, .45 caliber pistol) during and in relation to a crime of violence for which he may be prosecuted in a court of the United States – violations of 18 U.S.C. § 249 as charged in Counts 1 to 9, and violations of 18 U.S.C. § 247 as charged in Counts 13 to 21 – and caused the death of each victim listed below through the use of the firearm in such a manner as to constitute murder as defined in 18 U.S.C. § 1111, in that the Defendant, with malice aforethought, did unlawfully kill each victim with the firearm.

| COUNT | VICTIM |
|-------|--------|
| 25 | Reverend Sharonda Coleman-Singleton |
| 26 | Cynthia Hurd |
| 27 | Susie Jackson |

**Exhibit A**

| 28 | Ethel Lee Lance |
|----|-----------------|
| 29 | Reverend DePayne Middleton-Doctor |
| 30 | Reverend Clementa Pinckney |
| 31 | Tywanza Sanders |
| 32 | Reverend Daniel Simmons, Sr. |
| 33 | Myra Thompson |

All in violation of Title 18, United States Code, Sections 924(c)(1)(A), 924(c)(1)(C), and 924(j)(1).

## NOTICE OF SPECIAL FINDINGS PURSUANT TO TITLE 18, UNITED STATES CODE, SECTIONS 3591 AND 3592

THE GRAND JURY FURTHER FINDS:

21. The allegations set forth in paragraphs 1 through 20 are repeated and realleged as if set forth fully herein.

22. As to Counts 13-21 and 25-33, the Defendant DYLANN STORM ROOF:

(a) was 18 years of age or older at the time of the offense;

(b) intentionally killed Reverend Sharonda Coleman-Singleton, Cynthia Hurd, Susie Jackson, Ethel Lee Lance, Reverend DePayne Middleton-Doctor, Reverend Clementa Pinckney, Tywanza

**Exhibit A**

Sanders, Reverend Daniel Simmons, Sr., and Myra Thompson (18 U.S.C. § 3591(a)(2)(A));

(c) intentionally inflicted serious bodily injury that resulted in the deaths of Reverend Sharonda Coleman-Singleton, Cynthia Hurd, Susie Jackson, Ethel Lee Lance, Reverend DePayne Middleton-Doctor, Reverend Clementa Pinckney, Tywanza Sanders, Reverend Daniel Simmons, Sr., and Myra Thompson (18 U.S.C. § 3591(a)(2)(B));

(d) intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and Reverend Sharonda Coleman-Singleton, Cynthia Hurd, Susie Jackson, Ethel Lee Lance, Reverend DePayne Middleton-Doctor, Reverend Clementa Pinckney, Tywanza Sanders, Reverend Daniel Simmons, Sr., and Myra Thompson died as a direct result of such act (18 U.S.C. § 3591(a)(2)(C));

(e) intentionally and specifically engaged in an act of violence, knowing that the act created a

**Exhibit A**

grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Reverend Sharonda Coleman-Singleton, Cynthia Hurd, Susie Jackson, Ethel Lee Lance, Reverend DePayne Middleton-Doctor, Reverend Clementa Pinckney, Tywanza Sanders, Reverend Daniel Simmons, Sr., and Myra Thompson died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

(f) committed the offenses charged in Counts 13-21 and 25-33 after substantial planning and premeditation to cause the death of a person (18 U.S.C. § 3592(c)(9));

(g) committed the offenses in Counts 15 and 27 (for killing Susie Jackson who was eighty-seven years old), Counts 16 and 28 (for killing Ethel Lee Lance, who was seventy years old), and Counts 20 and 32 (for killing Reverend Daniel Simmons, Sr., who was seventy-four years old) on victims who were particularly vulnerable due to old age (18 U.S.C. § 3592(c)(11)); and

**Exhibit A**

(h) in committing the offenses in Counts 13-21 and

25-33, intentionally killed and attempted to kill

more than one person in a single criminal episode

(18 U.S.C. § 3592(c)(16)).

A  *TRUE*                              Bill

Redacted

FOREPERSON

_____
WILLIAM N. NETTLES (jnr)
UNITED STATES ATTORNEY

_____
VANITA GUPTA
PRINCIPAL DEPUTY ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION

**Exhibit A**

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CRIMINAL NO. |
| | § | |
| DYLANN ROOF | § | |
| | § | |

## CERTIFICATE OF THE ATTORNEY GENERAL

I, Loretta E. Lynch, hereby certify that in my judgment, prosecution by the United States of Dylann Roof for violating Title 18, United States Code, § 249(a)(1), is in the public interest and is necessary to secure substantial justice and the state lacks jurisdiction to bring a hate crime prosecution. This certification is made pursuant to Title 18, United States Code, § 249.

Signed this 20ᵗʰ day of July, 2015.

Loretta E. Lynch
Attorney General

**Exhibit A**

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

UNITED STATES OF AMERICA    §
                            §
V.                          §        CRIMINAL NO.
                            §
DYLANN ROOF                 §
                            §
                            §

## CERTIFICATE OF THE ATTORNEY GENERAL

I, Loretta E. Lynch, hereby certify that in my judgment, prosecution by the United States of Dylann Roof for violating Title 18, United States Code, § 247(a)(2), is in the public interest and is necessary to secure substantial justice.  This certification is made pursuant to Title 18, United States Code, § 247 (e).

Signed this 20th day of July, 2015.

Loretta E. Lynch
Attorney General

**Exhibit A**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 18-292 |
| v. | ) | |
| | ) | (18 U.S.C. §§ 247(a)(2), 247(d)(1), |
| ROBERT BOWERS | ) | 247(d)(3), 249(a)(1)(B)(i), 249(a)(1)(B)(ii), |
| | ) | 924(c)(1)(A)(i), 924(c)(1)(A)(ii), |
| | ) | 924(c)(1)(A)(iii), and 924(j)(1)) |
| | ) | |

**FILED**

JAN 2 9 2019

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

### SUPERSEDING INDICTMENT

The grand jury charges:

1.     At all times relevant to the Superseding Indictment, the defendant, ROBERT BOWERS, was a resident of Allegheny County in the Western District of Pennsylvania.

2.     Prior to October 27, 2018, the defendant, ROBERT BOWERS, created an account on the website gab.com. The account for the defendant, ROBERT BOWERS, included a statement on his profile expressing the belief that "jews are the children of satan," as well as several posts that referred to Jewish people using anti-Semitic slurs.

3.     On or about October 10, 2018, the defendant, ROBERT BOWERS, posted on gab.com a criticism of the Hebrew Immigrant Aid Society (HIAS) and a link to a HIAS webpage listing Jewish congregations that were hosting refugee-related events. That list of congregations included the Dor Hadash Jewish congregation of Pittsburgh. In the posting, the defendant, ROBERT BOWERS, wrote, "Why hello there HIAS! You like to bring in hostile invaders to dwell among us? We appreciate the list of friends you have provided[.]"

4.     On the morning of October 27, 2018, the defendant, ROBERT BOWERS, drove to the Tree of Life Synagogue ("the Synagogue"), located at 5898 Wilkins Avenue, Pittsburgh, Pennsylvania. The Synagogue building houses three Jewish congregations, to include the Tree of

**Exhibit B**

Life, Dor Hadash, and New Light congregations.

5.    Before entering the Tree of Life Synagogue, the defendant, ROBERT BOWERS, posted on gab.com, "HIAS likes to bring invaders in that kill our people.  I can't sit by and watch my people get slaughtered.  Screw your optics, I'm going in."

6.    At that time, members of the Tree of Life, Dor Hadash, and New Light congregations had gathered to engage in religious worship at the Tree of Life Synagogue and were already present within the building.  Additional congregants were arriving at the Tree of Life Synagogue to engage in religious worship.

7.    As he approached the building carrying multiple firearms, the defendant, ROBERT BOWERS, shot at and shattered a large window on the Synagogue's façade, near the entrance.  The defendant, ROBERT BOWERS, then entered the Tree of Life Synagogue.

8.    While inside the Synagogue, the defendant, ROBERT BOWERS, opened fire, killing and injuring members of the Tree of Life, Dor Hadash, and New Light congregations.

9.    The defendant, ROBERT BOWERS, also fired at responding public safety officers, injuring patrol officers outside the Tree of Life Synagogue as they approached the building.  In addition, after Pittsburgh SWAT operators entered the Synagogue, and while they were attempting to rescue surviving victims and to locate the shooter, the defendant, ROBERT BOWERS, opened fire on the SWAT operators, injuring several of them.

10.    While inside the Tree of Life Synagogue, the defendant, ROBERT BOWERS, made statements conveying his anti-Semitic beliefs and indicating his desire to "kill Jews."

11.    Paragraphs 1 through 10 of this Superseding Indictment are hereby reincorporated as to all Counts charged below.

**Exhibit B**

## COUNTS ONE THROUGH ELEVEN
**(Obstruction of Free Exercise of Religious Beliefs Resulting in Death)**

The grand jury further charges:

On or about October 27, 2018, in the Western District of Pennsylvania, the defendant, ROBERT BOWERS, intentionally obstructed by force each victim listed below in the enjoyment of that victim's free exercise of religious beliefs:

| COUNT | VICTIM |
|-------|--------|
| 1 | J.F. |
| 2 | R.G. |
| 3 | R.M. |
| 4 | J.R. |
| 5 | C.R. |
| 6 | D.R. |
| 7 | B.S. |
| 8 | S.S. |
| 9 | D.S. |
| 10 | M.W. |
| 11 | I.Y. |

The acts of the defendant, ROBERT BOWERS, resulted in the death of each victim listed in Counts One through Eleven, and the offense was in and affected interstate commerce.

All in violation of Title 18, United States Code, Sections 247(a)(2) and 247(d)(1).

**Exhibit B**

## COUNTS TWELVE THROUGH TWENTY-TWO
### (Hate Crime Act Resulting in Death)

The grand jury further charges:

On or about October 27, 2018, in the Western District of Pennsylvania, the defendant, ROBERT BOWERS, willfully caused bodily injury to each victim listed below because of that victim's actual and perceived religion:

| COUNT | VICTIM |
|-------|--------|
| 12 | J.F. |
| 13 | R.G. |
| 14 | R.M. |
| 15 | J.R. |
| 16 | C.R. |
| 17 | D.R. |
| 18 | B.S. |
| 19 | S.S. |
| 20 | D.S. |
| 21 | M.W. |
| 22 | I.Y. |

The offenses resulted in the death of each victim listed in Counts Twelve through Twenty-Two.

All in violation of Title 18, United States Code, Section 249(a)(1)(B)(i).

**Exhibit B**

## COUNTS TWENTY-THREE THROUGH THIRTY-THREE
### (Use and Discharge of a Firearm to Commit Murder During and in Relation to a Crime of Violence and Possession of a Firearm in Furtherance of a Crime of Violence)

The grand jury further charges:

On or about October 27, 2018, in the Western District of Pennsylvania, the defendant, ROBERT BOWERS, did knowingly use, carry, brandish, and discharge a firearm, to wit, 1) a Glock .357 handgun, bearing serial number BCUM029; 2) a Glock .357 handgun, bearing serial number YEY449; 3) a Glock .357 handgun, bearing serial number RHY244; and 4) a Colt AR-15 rifle, model SP1, bearing serial number SP99907, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is, violations of 18 U.S.C. § 247 as charged in Counts One through Eleven, and violations of Title 18, United States Code, Section 249, as charged in Counts Twelve through Twenty-Two of this Superseding Indictment, and did knowingly and unlawfully possess a firearm in furtherance of said crimes of violence, as to each victim set forth below, and did cause the death of each victim listed below through the use of a firearm in such a manner as to constitute murder as defined in 18 U.S.C. § 1111(a), in that the defendant, ROBERT BOWERS, with malice aforethought, did unlawfully kill each victim with a firearm.

| COUNT | CORRESPONDING CRIME OF VIOLENCE BY COUNTS | VICTIM |
|-------|-------------------------------------------|--------|
| 23 | 1 and 12 | J.F. |
| 24 | 2 and 13 | R.G. |
| 25 | 3 and 14 | R.M. |
| 26 | 4 and 15 | J.R. |
| 27 | 5 and 16 | C.R. |
| 28 | 6 and 17 | D.R. |
| 29 | 7 and 18 | B.S. |
| 30 | 8 and 19 | S.S. |
| 31 | 9 and 20 | D.S. |
| 32 | 10 and 21 | M.W. |
| 33 | 11 and 22 | I.Y. |

All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), and 924(j)(1).

**Exhibit B**

## COUNTS THIRTY-FOUR AND THIRTY-FIVE
### (Obstruction of Free Exercise of Religious Beliefs Involving an
### Attempt to Kill and Use of a Dangerous Weapon, and Resulting in Bodily Injury)

The grand jury further charges:

On or about October 27, 2018, in the Western District of Pennsylvania, the defendant, ROBERT BOWERS, intentionally obstructed, by force and threat of force, each victim listed below in the enjoyment of that victim's free exercise of religious beliefs, and attempted to do so:

| COUNT | VICTIM |
|-------|--------|
| 34 | D.L. |
| 35 | A.W. |

The acts of the defendant, ROBERT BOWERS, included an attempt to kill each victim listed in Counts Thirty-Four and Thirty-Five; and resulted in bodily injury to each victim listed in Counts Thirty-Four and Thirty-Five; such acts also included the use, attempted use, and threatened use of a dangerous weapon, to wit, 1) a Glock .357 handgun, bearing serial number BCUM029; 2) a Glock .357 handgun, bearing serial number YEY449; 3) a Glock .357 handgun, bearing serial number RHY244; and 4) a Colt AR-15 rifle, model SP1, bearing serial number SP99907; and the offense was in and affected interstate commerce.

All in violation of Title 18, United States Code, Sections 247(a)(2), 247(d)(1), and 247(d)(3).

**Exhibit B**

## COUNTS THIRTY-SIX AND THIRTY-SEVEN
### (Hate Crime Act Involving an Attempt to Kill)

The grand jury further charges:

On or about October 27, 2018, in the Western District of Pennsylvania, the defendant, ROBERT BOWERS, willfully caused bodily injury to each victim listed below because of that victim's actual and perceived religion:

| COUNT | VICTIM |
|-------|--------|
| 36 | D.L. |
| 37 | A.W. |

The offenses included an attempt to kill each victim listed in Counts Thirty-Six and Thirty-Seven.

All in violation of Title 18, United States Code, Section 249(a)(1)(B)(ii).

7

**Exhibit B**

## COUNTS THIRTY-EIGHT AND THIRTY-NINE
### (Use and Discharge of a Firearm During and in Relation to a Crime of Violence and Possession of a Firearm in Furtherance of a Crime of Violence)

The grand jury further charges:

On or about October 27, 2018, in the Western District of Pennsylvania, the defendant, ROBERT BOWERS, did knowingly use, carry, brandish, and discharge a firearm, to wit, 1) a Glock .357 handgun, bearing serial number BCUM029; 2) a Glock .357 handgun, bearing serial number YEY449; 3) a Glock .357 handgun, bearing serial number RHY244; and 4) a Colt AR-15 rifle, model SP1, bearing serial number SP99907, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is, violations of 18 U.S.C. § 247 as charged in Counts Thirty-Four and Thirty-Five, and violations of Title 18, United States Code, Section 249, as charged at Counts Thirty-Six and Thirty-Seven of this Superseding Indictment, and did knowingly and unlawfully possess a firearm in furtherance of said crimes of violence, as to each victim listed below.

| COUNT | CORRESPONDING CRIME OF VIOLENCE BY COUNTS | VICTIM |
|-------|-------------------------------------------|--------|
| 38 | 34 and 36 | D.L. |
| 39 | 35 and 37 | A.W. |

All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), and 924(c)(1)(A)(iii).

8

**Exhibit B**

## COUNTS FORTY THROUGH FORTY-SEVEN
### (Obstruction of Free Exercise of Religious Beliefs Involving an Attempt to Kill and Use of a Dangerous Weapon, and Resulting in Bodily Injury to a Public Safety Officer)

The grand jury further charges:

On or about October 27, 2018, in the Western District of Pennsylvania, the defendant, ROBERT BOWERS, intentionally obstructed, by force and threat of force, each victim listed below in the enjoyment of that victim's free exercise of religious beliefs, and attempted to do so:

| COUNT | VICTIM |
|-------|--------|
| 40 | C.B. |
| 41 | J.C. |
| 42 | M.G. |
| 43 | A.G. |
| 44 | J.M. |
| 45 | J.P. |
| 46 | S.W. |
| 47 | B.W. |

The acts of the defendant, ROBERT BOWERS, included an attempt to kill each victim listed in Counts Forty through Forty-Seven; such acts also included the use, attempted use, and threatened use of a dangerous weapon, to wit, 1) a Glock .357 handgun, bearing serial number BCUM029; 2) a Glock .357 handgun, bearing serial number YEY449; 3) a Glock .357 handgun, bearing serial number RHY244; and 4) a Colt AR-15 rifle, model SP1, bearing serial number SP99907; and such acts resulted in bodily injury to A.B., T.M., D.M., J.P., and M.S., public safety officers who were then performing duties as a direct and proximate result of the defendant's conduct as charged in Counts Forty through Forty-Seven; and the offense was in and affected interstate commerce.

All in violation of Title 18, United States Code, Sections 247(a)(2), 247(d)(1), and 247(d)(3).

**Exhibit B**

## COUNTS FORTY-EIGHT THROUGH FIFTY-ONE
### (Obstruction of Free Exercise of Religious Beliefs Involving
### Use of a Dangerous Weapon and Resulting in Bodily Injury to a Public Safety Officer)

The grand jury further charges:

On or about October 27, 2018, in the Western District of Pennsylvania, the defendant, ROBERT BOWERS, intentionally obstructed, by force and threat of force, each victim listed below in the enjoyment of that victim's free exercise of religious beliefs, and attempted to do so:

| COUNT | VICTIM |
|-------|--------|
| 48    | D.D.   |
| 49    | L.F.   |
| 50    | D.R.2  |
| 51    | J.S.   |

The acts of the defendant, ROBERT BOWERS, included the use, attempted use, and threatened use of a dangerous weapon, to wit: 1) a Glock .357 handgun, bearing serial number BCUM029; 2) a Glock .357 handgun, bearing serial number YEY449; 3) a Glock .357 handgun, bearing serial number RHY244; and 4) a Colt AR-15 rifle, model SP1, bearing serial number SP99907; and such acts resulted in bodily injury to A.B., T.M., D.M., J.P., and M.S., public safety officers who were then performing duties as a direct and proximate result of the defendant's conduct as charged in Counts Forty-Eight through Fifty-One; and the offense was in and affected interstate commerce.

All in violation of Title 18, United States Code, Sections 247(a)(2) and 247(d)(3).

**Exhibit B**

**COUNTS FIFTY-TWO THROUGH SIXTY-THREE**
**(Use and Discharge of a Firearm During and in Relation to a Crime of Violence and Possession of a Firearm in Furtherance of a Crime of Violence)**

The grand jury further charges:

On or about October 27, 2018, in the Western District of Pennsylvania, the defendant, ROBERT BOWERS, did knowingly use, carry, brandish, and discharge a firearm, to wit, 1) a Glock .357 handgun, bearing serial number BCUM029; 2) a Glock .357 handgun, bearing serial number YEY449; 3) a Glock .357 handgun, bearing serial number RHY244; and 4) a Colt AR-15 rifle, model SP1, bearing serial number SP99907, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, that is, violations of Title 18, United States Code, Section 247, as charged at Counts Forty through Fifty-One, and did knowingly and unlawfully possess a firearm in furtherance of said crime of violence, as to the civilian and public safety officer victims listed below.

| COUNT | CORRESPONDING CRIME OF VIOLENCE BY COUNT | VICTIMS |
|-------|------------------------------------------|---------|
| 52 | 40 | C.B., A.B., T.M., D.M., and M.S. |
| 53 | 41 | J.C., A.B., T.M., D.M., and M.S. |
| 54 | 42 | M.G., A.B., T.M., D.M., and M.S. |
| 55 | 43 | A.G., A.B., T.M., D.M., and M.S. |
| 56 | 44 | J.M., A.B., T.M., D.M., and M.S. |
| 57 | 45 | J.P., A.B., T.M., D.M., and M.S. |
| 58 | 46 | S.W., A.B., T.M., D.M., and M.S. |
| 59 | 47 | B.W., A.B., T.M., D.M., and M.S. |
| 60 | 48 | D.D., A.B., T.M., D.M., and M.S. |
| 61 | 49 | L.F., A.B., T.M., D.M., and M.S. |
| 62 | 50 | D.R.2., A.B., T.M., D.M., and M.S. |
| 63 | 51 | J.S., A.B., T.M., D.M., and M.S. |

All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), and 924(c)(1)(A)(iii).

11

**Exhibit B**

## NOTICE OF SPECIAL FINDINGS PURSUANT TO
## TITLE 18, UNITED STATES CODE, SECTIONS 3591 AND 3592

The grand jury further finds:

As to Counts One through Eleven and Counts Twenty-Three through Thirty-Three, the defendant, ROBERT BOWERS,

        a.     was 18 years of age or older at the time of the offense;

        b.     intentionally killed J.F., R.G., R.M., J.R., C.R., D.R., B.S., S.S., D.S., M.W., and I.Y. (18 U.S.C. § 3591(a)(2)(A));

        c.     intentionally inflicted serious bodily injury that resulted in the deaths of J.F., R.G., R.M., J.R., C.R., D.R., B.S., S.S., D.S., M.W., and I.Y. (18 U.S.C. § 3591(a)(2)(B));

        d.     intentionally participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and J.F., R.G., R.M., J.R., C.R., D.R., B.S., S.S., D.S., M.W., and I.Y. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(C));

        e.     intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life, and J.F., R.G., R.M., J.R., C.R., D.R., B.S., S.S., D.S., M.W., and I.Y. died as a direct result of the act (18 U.S.C. § 3591(a)(2)(D));

        f.     committed the offenses charged in Counts One through Eleven and Counts Twenty-Three through Thirty-Three knowingly creating a grave risk of death to one or more persons in addition to the victims of the offenses, to include responding public safety officers A.B., J.C., J.G., J.H., T.M., D.M., A.M., J.P., J.R., M.S., M.S.2 and C.T. (18 U.S.C. § 3592(c)(5));

        g.     committed the offenses charged in Counts One through Eleven and Counts Twenty-Three through Thirty-Three after substantial planning and premeditation to cause the

12

**Exhibit B**

death of a person (18 U.S.C. § 3592(c)(9));

h.     committed the offenses charged in Counts One, Three, Seven through Ten, Twenty-Three, Twenty-Five, and Twenty-Nine through Thirty-Two, against victims who were particularly vulnerable due to old age (18 U.S.C. § 3592(c)(11));

i.     committed the offenses charged in Counts Five, Six, Twenty-Seven, and Twenty-Eight, against victims who were particularly vulnerable due to infirmity (18 U.S.C. § 3592(c)(11)); and

j.     in committing the offenses charged in Counts One through Eleven and Counts Twenty-Three through Thirty-Three, intentionally killed and attempted to kill more than one person in a single criminal episode (18 U.S.C. § 3592(c)(16)).

**Exhibit B**

## FORFEITURE ALLEGATIONS

The grand jury re-alleges and incorporates by reference the allegations contained in Counts Twenty-Three through Thirty-Three, Thirty-Eight and Thirty-Nine, and Fifty-Two through Sixty-Three of this Superseding Indictment for the purpose of alleging criminal forfeiture pursuant to Title 18, United States Code, Section 924(d); and Title 28, United States Code, Section 2461(c). As part of the commissions of the violations of Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), and 924(j)(1), charged in Counts Twenty-Three through Thirty-Three, Thirty-Eight and Thirty-Nine, and Fifty-Two through Sixty-Three of this Superseding Indictment, the following firearms, ammunition, and other property, which were involved and used in the knowing commission of those offenses, are subject to forfeiture pursuant to Title 18, United States Code, Section 924(d); and Title 28, United States Code, Section 2461(c):

      a.      A Glock .357 handgun bearing serial number BCUM029 and any ammunition contained therein;

      b.      A Glock .357 handgun bearing serial number YEY449 and any ammunition contained therein;

      c.      A Glock .357 handgun bearing serial number RHY244 and any ammunition contained therein;

      d.      A Colt AR-15 rifle model SP1 bearing serial number SP99907 and any ammunition contained therein;

      e.      A shotgun recovered from the scene of the incident and any recovered ammunition contained therein; and

**Exhibit B**

   f.  Any other property, to include ammunition, which was involved and used in the knowing commission of the offenses specified above.


SCOTT W. BRADY
United States Attorney
PA ID No. 88352


ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

**Exhibit B**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.                                          Criminal No. 18-292

ROBERT BOWERS

## CERTIFICATION AND NOTICE FOR FILING PRETRIAL MOTIONS

I hereby certify that I have been notified by the United States Magistrate Judge that all pretrial motions must be filed within fourteen (14) days of Arraignment unless the Court extends the time upon written application made within said fourteen (14) day period.

_____              _____
Date                                 Attorney for Defendant
                                     ROBERT BOWERS

**Exhibit B**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

             v.                        Criminal No. 18-292

ROBERT BOWERS

## ARRAIGNMENT PLEA

Defendant ROBERT BOWERS

being arraigned, pleads  _____

in open Court this  _____ day of

_____ , 20  \_18_____

_____
(Defendant's Signature)

_____
(Attorney for Defendant)

**Exhibit B**

18-292

# CRIMINAL CASE INFORMATION SHEET

Pittsburgh    X          Erie          Johnstown         

Related to No.                     Judge                
(All criminal prosecutions arising out of the same criminal transaction or series of transactions are deemed related.)

CATEGORY:
1.       Narcotics and Other Controlled Substances
1a.       Narcotics and Other Controlled Substances
        (3 or more Defendants)
2.       Fraud and Property Offenses
2a.       Fraud and Property Offenses
        (3 or more Defendants)
3.   X   Crimes of Violence
4.       Sex Offenses
5.       Firearms and Explosives
6.       Immigration
7.       All Others

Defendant's name:         ROBERT BOWERS

Is indictment waived:         _____ Yes    X   No

Pretrial Diversion:         _____ Yes    X   No

Juvenile proceeding:         _____ Yes    X   No

Defendant is:         X   Male       _____ Female

Superseding indictment or information    X   Yes       _____ No

Previous case number: 18-292

If superseding, previous case was/will be:

_____ Dismissed on defendant's motion
  X   Dismissed on governments' motion
_____ After appellate action
_____ Other (explain)

County in which first offense cited
occurred:         Allegheny County

Previous proceedings before
Magistrate Judge:         Robert C. Mitchell

      Case No.:         18-1396M

PLEASE INCORPORATE MAGISTRATE CASE WITH CRIMINAL CASE

**Exhibit B**

Date arrested or date continuous U.S.
custody began:                              10/27/2018

Defendant:                                   X   is in custody          _____  is not in custody

Name of Institution:                      Butler County Prison

Custody is on:                              X   this charge            _____  another charge

                                                _____  State              X   Federal

Detainer filed:                             X   yes                    _____  no

Date detainer filed:                       10/29/18

Total defendants:                           1

Total counts:                               63

Data below applies to defendant No.:        1

Defendant's name:                         ROBERT BOWERS

| COUNT | U.S. CODE | OFFENSE | FELONY |
|---|---|---|---|
| 1-11 | 18 U.S.C. §§ 247(a)(2) and 247(d)(1) | Obstruction of Free Exercise of Religious Beliefs Resulting in Death | X |
| 12-22 | 18 U.S.C. § 249(a)(1)(B)(i) | Hate Crime Resulting in Death | X |
| 23-33 | 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii) and 924(j)(1) | Use and Discharge of a Firearm to Commit Murder During and in Relations to a Crime of Violence and Possession of a Firearm in Furtherance of a Crime of Violence | X |
| 34-35 | 18 U.S.C. §§ 247(a)(2), 247(d)(1) and 247(d)(3) | Obstruction of Free Exercise of Religious Beliefs Involving an Attempt to Kill and Use of a Dangerous Weapon, and Resulting in Bodily Injury | X |
| 36-37 | 18 U.S.C. § 249(a)(1)(B)(ii) | Hate Crime Act Involving an Attempt to Kill | X |

**Exhibit B**

| COUNT | U.S. CODE | OFFENSE | FELONY |
|---|---|---|---|
| 38-39 52-63 | 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii) and 924(c)(1)(A)(iii) | Use and Discharge of a Firearm During and in Relation to a Crime of Violence and Possession of a Firearm in Furtherance of a Crime of Violence | X |
| 40-47 | 18 U.S.C. §§ 247(a)(2), 247(d)(1) and 247(d)(3) | Obstruction of Free Exercise of Religious Beliefs Involving an Attempt to Kill and Use of a Dangerous Weapon, and Resulting in Bodily Injury to a Public Safety Officer | X |
| 48-51 | 18 U.S.C. §§ 247(a)(2) and 247(d)(3) | Obstruction of Free Exercise of Religious Beliefs Involving Use of a Dangerous Weapon and Resulting in Bodily Injury to a Public Safety Officer | X |

## FORFEITURE ALLEGATIONS

I certify that to the best of my knowledge the above entries are true and correct.

DATE:     JAN 2 9 2019

SOO C. SONG
Assistant U.S. Attorney
DC ID No. 457268

DATE:     JAN 2 9 2019

TROY RIVETTI
Assistant U.S. Attorney
PA ID No. 56816

**Exhibit B**